916 So.2d 108 (2005)
In re Carmen S. MADERA.
No. 2005-B-0816.
Supreme Court of Louisiana.
December 9, 2005.

*109 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Carmen S. Madera, an attorney licensed to practice law in Louisiana.[1]

FORMAL CHARGES
The ODC filed two sets of formal charges against respondent. The first set, bearing the disciplinary board's docket number 02-DB-022, was filed on February 25, 2002 and consists of two counts of misconduct. The second set, bearing the disciplinary board's docket number 03-DB-048, was filed on July 31, 2003 and consists of six counts of misconduct.
The first set of formal charges was considered by a hearing committee and the disciplinary board. After the board's recommendation was lodged in this court, the ODC filed a motion to remand the matter to the board for consolidation with the second set of formal charges. This court *110 granted the motion. In re: Madera, 03-2947 (La.4/7/04). On March 29, 2005, the board filed in this court a single recommendation of discipline encompassing both sets of formal charges.

02-DB-022

Counts I & II
Respondent was retained to represent Bernard Bagalso and Christopher Cagandahan in a personal injury matter. Respondent settled her clients' cases on December 6, 1999. Because she did not have a client trust account at this time, respondent deposited the settlement checks into her operating account. Respondent then paid her clients with checks drawn on an account belonging to a friend, Edna Anderson.[2] Respondent withheld a total of $3,711.80 from the settlement proceeds to pay medical expenses owed by Mr. Bagalso and Mr. Cagandahan to Uptown Physical Medicine and Rehabilitation. However, respondent failed to disburse the funds to the medical provider.
Mr. Bagalso filed a disciplinary complaint against respondent, alleging that she settled his case without his knowledge or consent. The medical provider also filed a disciplinary complaint against respondent. The ODC forwarded a copy of the complaints to respondent by certified mail. However, respondent failed to reply to the medical provider's complaint. The ODC thereafter served respondent with two subpoenas compelling her to appear and answer the complaint under oath. On both occasions, respondent failed to appear. On June 13, 2001, during a sworn statement in connection with an unrelated disciplinary matter, respondent agreed to appear on June 18, 2001 to answer the complaint. Again, she failed to appear. The ODC then served respondent with a third subpoena compelling her to appear on October 3, 2001. Respondent sent a letter to the ODC on September 30, 2001, requesting that the sworn statement be rescheduled for October 31, 2001. Respondent finally appeared on that date.
The ODC alleges that respondent violated the following Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.6(a) (confidentiality of information relating to the representation of a client), 1.15(a)(b)(d) (safekeeping property of clients or third persons), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation).

03-DB-048

Count I
In August 1999, respondent enrolled as counsel of record in a succession matter pending in the 34th Judicial District Court. Respondent filed several pleadings in the matter during a period of time in which she was ineligible to practice law for failure *111 to pay her bar dues and the disciplinary assessment, and for failure to comply with the mandatory continuing legal education ("MCLE") requirements. On March 1, 2002, respondent appeared in open court to argue a motion, at which time the presiding judge learned that she was ineligible to practice.
The ODC alleges that respondent violated the following Rules of Professional Conduct: Rules 1.1(b) (failure to comply with the minimum requirements of continuing legal education), 3.3 (lack of candor toward the tribunal), 3.5(c) (engaging in conduct intended to disrupt a tribunal), 5.5(a) (engaging in the unauthorized practice of law), 8.4(a), 8.4(c), and 8.4(d).

Counts II, III, & IV
Respondent was retained to represent Rhodri Lazaro, Geraldine Emnace, and Princess Emnace in a personal injury matter. Respondent's clients received medical treatment from Stagni Chiropractic Clinic, which sent a lien letter to respondent. In April 2001, respondent settled her clients' cases. The settlements included funds totaling $4,261 to pay the medical provider's bills. However, respondent failed to disburse the funds to the medical provider.
Furthermore, while respondent was representing these clients, she was ineligible to practice law for failure to pay her bar dues and the disciplinary assessment, and for failure to comply with the MCLE requirements. Respondent was also on probation during this time pursuant to this court's order in Madera I and violated the conditions of her probation by engaging in the above conduct.
The medical provider's attorney filed a disciplinary complaint against respondent. The ODC forwarded a copy of the complaint to respondent by certified mail; however, respondent failed to reply. Thereafter, the ODC served respondent with a subpoena compelling her to appear and answer the complaint under oath. Respondent failed to appear.
The ODC alleges that respondent violated the following Rules of Professional Conduct: Rules 1.15(a)(b), 5.5(a), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g).

Counts V & VI
Respondent failed to fully comply with the conditions of her probation in Madera I. In particular, she failed to remain current in her professional obligations; she failed to complete the Louisiana State Bar Association's Ethics School; she failed to provide proof that she received treatment for the personal and emotional problems that interfere with her ability to practice law; she failed to submit a probation plan or regularly meet with her probation monitor; and as of July 14, 2003, she had not paid the costs and expenses associated with Madera I.
The ODC served respondent with a subpoena to give a sworn statement regarding this matter. However, respondent failed to appear.
The ODC alleges that respondent violated the following Rules of Professional Conduct: Rules 8.4(a), 8.4(d), and 8.4(g).

DISCIPLINARY PROCEEDINGS

02-DB-022
Respondent answered the formal charges and generally denied any misconduct in connection with her representation of Mr. Bagalso and Mr. Cagandahan. She also denied that she deliberately failed to cooperate with the ODC in its investigation. The matter then proceeded to a formal hearing on the merits, which was conducted by the hearing committee on August 20, 2002. Respondent was the only witness to testify at the hearing.

*112 Hearing Committee Recommendation

After reviewing the evidence presented at the hearing, the hearing committee found that respondent has been ineligible to practice law since August 14, 2000 for failing to comply with the MCLE requirements and since September 4, 2002 for nonpayment of bar dues and the disciplinary assessment. The committee also found that in August 1999, respondent agreed to represent Bernard Bagalso and Christopher Cagandahan in a personal injury case. On August 13, 1999, respondent guaranteed payment in writing to Uptown Physical Medicine and Rehabilitation for all medical services rendered to her two clients. The cases settled in December 1999 for $4,800. However, respondent did not have a client trust account. Therefore, she deposited both settlement checks into her business account. Because respondent was unable to withdraw funds from this account immediately, Edna Anderson, a former client who owed respondent money, wrote two personal checks in the amount of $1,000 each to Mr. Bagalso and Mr. Cagandahan. Subsequently, respondent paid Mr. Bagalso and Mr. Cagandahan $400 each from her account as their remaining portion of the settlement proceeds. She left the remaining funds in her account, and later converted these unearned funds to her own use. Respondent failed to pay the outstanding balance of $3,711.80 owed to Uptown Physical Medicine and Rehabilitation for her clients, and as of the date of the hearing, she had made no attempt to pay restitution to the medical provider. Furthermore, the committee found that respondent failed to answer the medical provider's complaint because she "couldn't cope with answering" and blamed the medical provider for her own medical problems. She reported the same reason for failing to appear for scheduled sworn statements. Despite being personally served or agreeing under oath to appear, respondent failed to appear for three scheduled sworn statements. Respondent finally appeared and gave a sworn statement on October 31, 2001 after requesting by letter that a fourth scheduled sworn statement be reset.
Based on these factual findings, the committee determined that respondent violated Rules 1.5 and 1.15 of the Rules of Professional Conduct with respect to her failure to maintain a client trust account, her commingling and conversion of client and third-party funds, and her failure to make payments to the third-party medical provider. The committee also determined that respondent failed to cooperate with the ODC in its investigation, in violation of Rules 8.1(b), 8.1(c), 8.4(a), and 8.4(g). The committee made no findings as to the remaining rule violations alleged in the formal charges.
The committee determined that respondent knowingly and intentionally violated duties owed to her clients, third parties, the public, and the profession. Her misconduct caused actual harm to her clients and a third-party medical provider. Considering the ABA's Standards for Imposing Lawyer Sanctions, the committee concluded that the baseline sanction for respondent's misconduct is disbarment.
The committee found that respondent did not bear her burden of proving that any mitigating circumstances exist. The committee recognized the following aggravating factors: prior disciplinary offenses (the fully deferred suspension imposed in Madera I), dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability *113 of the victims,[3] substantial experience in the practice of law (admitted 1990), and indifference to making restitution.
Under these circumstances, the committee recommended that respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

Disciplinary Board Recommendation
The disciplinary board found the hearing committee's findings of fact are not manifestly erroneous, except with respect to its finding that the personal injury claims of Mr. Bagalso and Mr. Cagandahan were settled for a total of $4,800. Rather, according to the record, Mr. Bagalso and Mr. Cagandahan each received $4,833.90 in settlement, for a total of $9,667.80.
Based on the factual findings, the board determined respondent violated Rules 1.1(a), 1.15(a), 1.15(b), 8.1(b), 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(g) of the Rules of Professional Conduct. Respondent acted incompetently by failing to properly handle her clients' settlement proceeds. She failed to hold funds belonging to clients and third parties in a separate trust account. Furthermore, she failed to promptly notify the medical provider that she had received settlement funds and failed to promptly deliver these funds to the medical provider. By converting the funds due the medical provider, respondent committed a criminal act that reflects adversely on her honesty, trustworthiness, or fitness as a lawyer. Furthermore, she engaged in dishonest, deceitful, and fraudulent conduct when she represented to the medical provider and to her clients that she would pay the clients' medical expenses from their settlement, then failed to do so. Finally, respondent failed to cooperate with the ODC in its investigation.
The board determined that the ODC failed to prove by clear and convincing evidence violations of Rules 1.2(a), 1.3, 1.4, 1.5, 1.6(a), 1.15(d), and 8.4(d) of the Rules of Professional Conduct. The ODC offered no evidence to rebut respondent's testimony that she consulted with her clients prior to accepting the settlement offer. Furthermore, there is no evidence that respondent did not diligently pursue her clients' matters or that she revealed confidential information to Ms. Anderson.
The board concluded that respondent knowingly and intentionally violated duties owed to her clients, to the public, and to the profession, causing actual harm to her clients and a third-party medical provider. Based on the ABA's Standards for Imposing Lawyer Sanctions and this court's prior jurisprudence, the board determined that the applicable baseline sanction ranges from a lengthy suspension to disbarment. Because respondent had not engaged in numerous instances of misconduct, the board felt a suspension, rather than disbarment, is appropriate. Accordingly, the board recommended that respondent be suspended from the practice of law for three years. The board further recommended that respondent be ordered to make restitution to Uptown Physical Medicine and Rehabilitation, and that she be assessed with all costs and expenses of these proceedings. One board member dissented and indicated that he would impose disbarment.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

*114 03-DB-048

The formal charges were served upon respondent by certified mail delivered on August 2, 2003.[4] Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the committee's consideration.

Hearing Committee Recommendation
After reviewing the ODC's submission, the hearing committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee found that despite her prior discipline, respondent has continued to fail to cooperate with the ODC, engaged in a pattern of converting client funds to her own use, and engaged in the unauthorized practice of law.
Based on these findings, the committee recommended respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

02-DB-022 & 03-DB-048

Disciplinary Board Recommendation
After reviewing the consolidated matters, the disciplinary board reiterated its previous findings as to 02-DB-022. With regard to 03-DB-048, the board agreed that respondent violated the Rules of Professional Conduct as alleged in the formal charges, except that her conversion of funds due to a third-party medical provider does not violate Rule 8.4(d). The board found that respondent acted incompetently when she failed to comply with the MCLE requirements and handled a succession matter while ineligible. By practicing law while ineligible, respondent tainted the court proceedings, engaged in conduct intended to disrupt the tribunal, engaged in the unauthorized practice of law, and engaged in conduct prejudicial to the administration of justice. Furthermore, respondent was dishonest and deceitful when she represented to her clients and the court that she was eligible to practice law. Respondent also failed to notify Stagni Chiropractic of her receipt of settlement funds and converted those funds to her own use. By doing so, she engaged in criminal conduct that was also dishonest, fraudulent, and deceitful. Respondent further engaged in the unauthorized practice of law in regard to Count III. She also failed to comply with the conditions of her probation, which was prejudicial to the administration of justice. Furthermore, respondent failed to cooperate with the ODC in two investigations.
In the consolidated matters, the board determined that respondent knowingly and intentionally violated duties owed to her clients, the profession, the legal system, and the public. Her conduct caused harm to her clients because Stagni Chiropractic filed suit against them when respondent failed to pay their medical bills. She also harmed the parties in the succession matter by tainting the proceeding with her improper involvement. Furthermore, respondent harmed the disciplinary system by failing to cooperate.
The board recognized the following aggravating factors: prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad *115 faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and indifference to making restitution. The board found no mitigating factors.
The board acknowledged that it had previously recommended a three-year suspension for the misconduct in the first set of formal charges. Nevertheless, when coupled with the misconduct in 03-DB-048, the board determined that permanent disbarment is warranted, citing Supreme Court Rule XIX, Appendix E, Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) and Guideline 8 (following notice, engaging in the unauthorized practice of law during a period of suspension or disbarment). Based on this reasoning, the board recommended that respondent be permanently disbarred. It further recommended that respondent be ordered to make restitution to the third-party medical providers and be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation. However, on our own motion, we ordered the parties to submit briefs addressing the issue of an appropriate sanction.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
It is clear from the record that respondent has violated numerous Rules of Professional Conduct. She has converted funds owed to her clients' medical providers. She has practiced law while ineligible to do so for failing to pay her bar dues and the disciplinary assessment and for failing to comply with the MCLE requirements. She has failed to comply with the conditions of her probation in Madera I and failed to cooperate with the ODC. All of this misconduct was knowing or intentional. Respondent violated duties to her clients, the public, the legal system, and the profession, causing actual harm to each of these entities.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The baseline sanction for respondent's misconduct is undoubtedly disbarment according to both the ABA's Standards for Imposing Lawyer Sanctions and *116 Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986).[5] In light of the aggravating factors present, and the absence of mitigating factors, there is no reason to deviate downward from the baseline sanction of disbarment. Disbarment is further supported in this case by respondent's long history of failing to fulfill her professional obligations (she has been ineligible since August 14, 2000 for failing to comply with the MCLE requirements and since September 4, 2002 for failing to pay bar dues and the disciplinary assessment). See In re: Pitre, 05-0853 (La.6/17/05), 903 So.2d 1130; In re: Domm, 04-1194 (La.10/8/04), 883 So.2d 966.
The sole remaining issue presented for our consideration is whether respondent's misconduct is so egregious that she should be permanently prohibited from reapplying for admission to the practice of law. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment.
Applying the guidelines to the instant case, we find respondent's conversion of funds due to her clients' medical providers falls within the scope of Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm).[6] Accordingly, we will accept the recommendation of the disciplinary board and permanently disbar respondent.

DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record and the brief filed by the ODC, it is ordered that the name of Carmen S. Madera, Louisiana Bar Roll number 19958, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent make restitution to her victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
CALOGERO, C.J., dissents in part and assigns reasons.
JOHNSON, J., would disbar.
*117 CALOGERO, Chief Justice, dissenting in part.
Being of the view that while disbarment in this case is warranted, making this disbarment permanent is not imperative on this record.
NOTES
[1] In 1999, this court accepted a petition for consent discipline and suspended respondent from the practice of law for one year and one day, fully deferred, subject to two years of supervised probation with conditions, for her neglect of a legal matter and failure to communicate with her client. In re: Madera, 99-3265 (La.12/10/99), 756 So.2d 282 ("Madera I").
[2] Ms. Anderson wrote checks in the amount of $1,000 each to Mr. Bagalso and Mr. Cagandahan. After the checks respondent had deposited into her operating account cleared, she wrote checks in the amount of $400 each to her clients. In total, Mr. Bagalso and Mr. Cagandahan received $1,400 each as their respective shares of the settlements.
[3] The committee observed that respondent's clients were not from this country, spoke little English, and had no basic understanding of our legal system.
[4] The return receipt card was signed by respondent personally.
[5] Hinrichs has established that disbarment is appropriate in conversion cases when one or more of the following elements are present:

the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
[6] The disciplinary board also relied on Guideline 8 in recommending permanent disbarment in this case. That guideline on its face applies to lawyers who engage in the unauthorized practice of law following resignation, suspension, or disbarment. In re: Pitre, supra. Because respondent has not resigned from the Louisiana State Bar Association, nor has she served a suspension or been disbarred, it follows that Guideline 8 is inapplicable here.